UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH EDWARD DAVIS,

                Plaintiff,

v.

ZACHARY D. CHORAK, A. TOOKER,
J.C. SCAVARDA, and EATON COUNTY,

                Defendants.

_____/

Hon. Sally J. Berens

Case No. 1:22-cv-166

## OPINION

Plaintiff Joseph Davis has sued Defendant Zachary Chorak for injuries he received in an assault and battery that occurred on July 2, 2020, when Chorak attacked Davis while both men were incarcerated at the Eaton County Jail. Davis filed this action in federal court because he has also sued jail employees Deputy Corrections Officers J.C. Scavarda and A. Tooker pursuant to 42 U.S.C. § 1983, alleging that they violated his Fourteenth Amendment rights by failing to protect him from Chorak. Finally, Davis alleges a *Monell* liability claim against Eaton County.[1]

Defendants Scavarda, Tooker, and Eaton County (the County Defendants) move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 10.) Scavarda and Tooker allege that Davis fails to state a claim upon which relief can be granted, and they are entitled to qualified immunity. The County argues that it is entitled to dismissal because Davis fails to

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[2] Although Defendants have requested oral argument, the Court determines that, because the parties' briefs adequately develop the issues, oral argument is unnecessary.

allege an underlying constitutional violation, and alternatively, Davis fails to allege a *Monell* claim. The matter is fully briefed and ready for decision.

For the following reasons, the Court will **grant** the motion in its entirety and dismiss Davis's complaint against the County Defendants with prejudice.[3] The Court declines to exercise supplemental jurisdiction over the assault and battery claim against Chorak and, therefore, will dismiss it without prejudice.

## I.   Background

On September 27, 2019, Davis was booked into the Eaton County Jail as a pretrial detainee. (ECF No. 1 at PageID.2.) Davis was charged with possession of methamphetamine, habitual offender, at the time of booking. (ECF No. 11-2 at PageID.64.) He pled guilty to the offense on October 17, 2019. (*Id.* at PageID.66.) Later, while still housed at the jail, Davis was charged with a second offense of delivery/manufacture of methamphetamine. (ECF No. 11-3 at PageID.73.) He pled guilty to that offense on June 23, 2020. (*Id.* at PageID.75.)

At intake, Davis was classified at the "4-Medium" security level. Except for the month of February 2020, in which he was elevated to "3-Medium High," Davis remained at the "4-Medium" level through July 2020. (ECF No. 1 at PageID.2.)

On or about February 29, 2020, Chorak was booked into the jail as a pretrial arrestee or pursuant to a court order, on a charge of unarmed robbery. Defendant Scavarda performed the initial security classification and assigned Chorak a "3-Medium High" designation. The booking report contained the following "'jail alerts:' sex offender, no IW or RC assignments, disciplinary, prison transport to MDOC . . . ." It also identified several prior bookings and indicated an "active

---

[3] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the Court conduct all further proceedings in this case, including entry of judgment. (ECF No. 30.)

hold." (*Id.* at PageID.3.) On March 30, 2020, Defendant Tooker maintained Chorak's "3-Medium High" classification. On May 1, 2020, Tooker lowered Chorak's classification to "4-Medium." Tooker maintained that classification on June 4, 2020. (*Id.*)

On July 2, 2020, Davis, Chorak, and a third inmate were playing a card game in a day room when Davis accused Chorak of cheating. A brief argument ensued, and Chorak attacked Davis without warning. Following the attack, Davis was taken to the hospital, where he was diagnosed with "eye trauma with suspected globe rupture" due to an assault. Davis was thereafter transferred to the University Michigan Hospital for further specialized treatment. He ultimately lost vision in his left eye due to the attack. (*Id.* at PageID.3–4.)

Chorak's criminal history included, among other things, a conviction for assault with intent to commit sexual penetration. In addition, a classification document from a previous incarceration at the jail in 2019 listed Chorak as "2-Close" based on prior assaultive felony convictions and known past institutional behavior problems. (*Id.* at PageID.4–5.)

## II.   Motion Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it

"stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

### III.   Discussion

#### A.      Materials the Court May Consider

As an initial matter, the Court must determine what documents or information it may consider beyond the pleadings in deciding the County Defendants' motion, as such determination affects the scope of review.[4]

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings") (citing *Rondigo, LLC v. Twp of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)). Nonetheless, it is well established that, in some circumstances, a court

---

[4] To the extent Davis contends that a Rule 12(b)(6) motion contravenes his Seventh Amendment right to a jury trial (ECF No. 20 at PageID.210–11), his argument lacks merit. "A litigant has no right to a jury trial if h[is] pleadings fail to state a triable claim." *Bartlett v. Pfizer, Inc.*, No. 20-5322, 2020 WL 8994754, at \*2 (6th Cir. Dec. 8, 2020).

may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56. Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). The specific items at issue here include: (1) the Register of Actions, Advice of Rights, and Judgment of Sentence in criminal case No. 2019 0000020274 FH, captioned *State of Michigan v. Joseph Davis* (ECF No. 11-2); (2) the Register of Actions, Advice of Rights, and Judgment of Sentence in criminal case No. 2019 0000020386 FH, captioned *State of Michigan v. Joseph Davis* (ECF No. 11-3); (3) a video of the July 2, 2020 assault (ECF No. 11-4); (4) the Register of Actions in criminal case No. 2021 0000020071, captioned *State of Michigan v. Zachary Chorak* (ECF No. 11-5); and (5) a video of the interview of Davis following the assault (ECF No. 11-6).

First, regarding the Registers of Actions in Davis's and Chorak's criminal cases, it is well established that a court may take judicial notice of the proceedings of other courts, including their docket reports. *Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020); *see also Plassman v. City of Wauseon*, No. 95-3736, 1996 WL 254662, at *3 (6th Cir. 1996) (stating that, in considering a Rule 12(b)(6) motion to dismiss, "any federal court may take judicial notice of the proceedings in other courts of record"); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (observing that federal courts may take judicial notice of the proceedings in other courts of record); *Cooper v. Rapp*, No. 2:16-cv-163, 2016 WL 7337521, at *3 (S.D. Ohio Dec. 19, 2016) (observing that "the Court's acknowledgment of the pendency of the State Court Proceedings— though not pleaded in Plaintiffs' Amended Complaint—does not convert Defendants' Motion to Dismiss into one for summary judgment"). The Court may therefore consider the Registers of

Actions without converting the County Defendants' motion to dismiss into one for summary judgment. The cases Davis cites in his brief (ECF No. 20 at PageID.213–14), do not address this particular circumstance and are not to the contrary.

As for the videos Defendants attach to their brief, they are not critical to determination of the legal issues presented in the motion. That is, the primary focus of the Court's decision is whether the allegations of the complaint satisfy the applicable constitutional standard for imposing liability on the County Defendants. Nonetheless, the videos do provide additional support for the County Defendants' arguments. That being said, the Sixth Circuit recently has made clear that district courts may consider video evidence in deciding qualified immunity issues at the motion to dismiss stage:

> In qualified-immunity cases, we've previously considered videos at the motion-to-dismiss stage. *See, e.g., Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). And for good reason. Qualified immunity isn't just a defense to liability— it's immunity from the costs and burdens of suit in the first place. *Scott v. Harris*, 550 U.S. 372, 376 n.2, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007); *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate. *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021) (highlighting the importance of applying qualified immunity even before discovery); *see Scott,* 550 U.S. at 376 n.2, 127 S. Ct. 1769. So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos.

*Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). The limitation, of course, arises when the video does not resolve the issue and a factual dispute still remains. In such cases, the plaintiff's version of events must control. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Here, Defendants offer the videos for limited purposes, and there is no factual dispute regarding the details for which the videos are offered. Therefore, the Court will consider them as part of the qualified immunity analysis.

### B.       Qualified Immunity

As previously mentioned, Defendants Tooker and Scavarda contend that they are entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude either that no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

Although the Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015), it has also said that when "pleadings in th[e] case are not ambiguous," and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings," the Court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005).

### 1.    Constitutional Violation

Before addressing the alleged constitutional violation, the Court must first determine whether Davis was a pretrial detainee or a convicted prisoner during the relevant period of time. His status is material because it affects the applicable standard of liability. The Eighth Amendment applies to claims by convicted prisoners, *see Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002) (noting that "[t]he Eighth Amendment applies to convicted prisoners"), while the Fourteenth Amendment governs claims by pretrial detainees. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (stating that the Fourteenth Amendment applies "where th[e] claim is asserted on behalf of a pre-trial detainee" (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008))). In the Sixth Circuit, the distinction was immaterial prior to the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), as the Sixth Circuit also applied the Eighth Amendment deliberate indifference standard from *Farmer v. Brennan*, 511 U.S. 825 (1994), to Fourteenth Amendment claims. *See Stein v. Gunkel*, __ F.4th __, No. 21-6118, 2022 WL 3210205, at *5 (6th Cir. Aug. 9, 2022). In *Kingsley*, however, the Supreme Court held that in an excessive force case, a pretrial detainee is not required to show that "the officers were *subjectively* aware that their use of force was unreasonable." 576 U.S. at 391-92. Instead, a pretrial detainee need only show that "the officers' use of that force was *objectively* unreasonable." *Id.* The Sixth Circuit has since extended *Kingsley* to pretrial detainee denial-of-medical-care claims. *Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021), *reh'g en banc denied*, 18 F.4th 551 (6th Cir. 2021). In *Brawner*, the court said that "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 597 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). More recently, the Sixth Circuit extended *Kingsley* to failure-to-protect claims. *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 729 (6th Cir. 2022), *reh'g en ban denied*, 35 F.4th 1051 (6th Cir. 2022); *see also Stein*, 2022 WL 3210205, at *5 (applying

*Westmoreland* to pretrial detainee failure-to-protect claim). In this context, for liability to attach, "a defendant officer must [1] act intentionally in a manner that [2] puts the plaintiff at substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause the plaintiff's injuries." *Westmoreland*, 29 F.4th at 729.

Although Davis alleges that he was a pretrial detainee at the time of the incident, the Registers of Actions in his criminal cases show that by the time of the July 2, 2020 assault, he had pled guilty in both cases. Under these circumstances, "the more demanding Eighth Amendment standard is applicable." *Morgan by Morgan v. Wayne Cnty.*, 33 F.4th 320, 326 (6th Cir. 2022) (Eighth Amendment standard appropriate where the plaintiff was both a pretrial detainee and a convicted prisoner at the time of the incident). In *Uraz v. Ingham County Jail*, No. 1:19-cv-550, 2019 WL 4292394 (W.D. Mich. Sept. 11, 2019), the court rejected the plaintiff's assertion that he should be considered a pretrial detainee, rather than a convicted prisoner covered by the Eighth Amendment, under circumstances indistinguishable from those in this case. The court found the argument meritless:

> The Eighth Amendment is the appropriate standard to be applied to Plaintiff's claim arising out of his 25-day placement in segregation. Having pleaded to and been found guilty of an offense, Plaintiff cannot meaningfully argue that he was a pretrial detainee, despite the fact that his sentence had not yet been imposed. As the Supreme Court recognized in the seminal case of *Bell v. Wolfish*, 441 U.S. 520 (1979):
>
>> where it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment, "[f]or under the Due Process Clause, a detainee must not be punished prior to an adjudication of guilt in accordance with due process of law."
>
> *Id.* at 535 (emphasis added); *see also Block v. Rutherford*, 468 U.S. 576, 583 (1984) (recognizing that application of a lesser standard to pretrial detainees turns on the impropriety of imposing "punishment" on those who have not yet been convicted). By entering a guilty plea that was accepted by the court, Plaintiff waived his right to trial. His detention, therefore, no longer qualified as "pretrial."

9

*Id.* at *7. Therefore, the Court will apply the Eighth Amendment standard.

To state a failure-to-protect claim, a plaintiff must demonstrate (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 829, 834, 847); *see also Greene v. Bowles*, 361 F.3d 290, 293–94 (6th Cir. 2004).

To satisfy the subjective component, the plaintiff must show that the defendant acted with deliberate indifference, that is, the plaintiff must demonstrate that the defendant was "subjectively aware of the risk," but failed "to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847). Specifically, the plaintiff must demonstrate that: (1) the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if reasonable measures were not taken; (2) the defendant actually drew the inference; and (3) the defendant disregarded that risk. *Farmer*, 511 U.S. at 837. To prevail on the specific claim that a defendant failed to protect him from an assault by another inmate, the plaintiff must establish that: (1) the defendant had reason to believe another inmate would assault plaintiff; and (2) the defendant had both the opportunity and means to prevent the assault. S*ee, e.g., Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

Davis's complaint's allegations fail to support a plausible Eighth Amendment claim against either Tooker or Scavarda. First, he alleges no fact indicating that he was exposed to a substantial risk of serious harm sufficient to meet the objective prong of an Eighth Amendment claim. Apart from providing some general details about Chorak's criminal history and arrest record, as well as some information from his prior bookings at the Eaton County Jail, Davis fails to allege any fact

showing that Chorak had threatened him or otherwise posed a risk of harm to him or other inmates.

Davis's own allegations show that he and Chorak were housed together at the same security level

for two months without incident. (ECF No. 1 at PageID.3.) Consistent with these allegations,

following the assault, Davis told Eaton County Sheriff's Office investigators that he and Chorak

had been housed together for 45 days and had had "no previous problems before this, at all." (ECF

No. 11-6 at 00:49–1:04.) In fact, nothing in the complaint suggests that the attack during the card

game was anything other than spontaneous and unexpected. Second, and even more significant, is

that the complaint is devoid of any allegation that Davis informed either Tooker or Scavarda, or

that either Defendant possessed such knowledge from another source, that Chorak had threatened

or posed a danger to Davis or that there was any sort of problem between the two men. An Eighth

Amendment claim will not lie when a plaintiff fails to allege that another inmate threatened him

and that he communicated those threats to prison officials. *See Beard v. Horton*, No. 2:22-cv-5,

2022 WL 620640, at *6 (W.D. Mich. Mar. 3, 2022) (dismissing failure-to-protect claim because

"[n]othing from the complaint . . . allows the Court to infer that Defendants were aware that the

two inmates would 'jump' Plaintiff"); *Sweeting v. Erdos*, No. 1:20-cv-290, 2020 WL 1957356, at

*3 (S.D. Ohio Apr. 23, 2020), *report and recommendation adopted*, 2020 WL 3971548 (S.D. Ohio

July 14, 2020) (dismissing failure-to-protect claim for failure to state a claim because the plaintiff

had not "alleged facts that plausibly suggest that any defendant was aware that defendant Wes

presented a substantial risk of harm to plaintiff"); *Mosquera v. Delgado*, No. 4:09CV1402, 2010

WL 2010973, at *4 (N.D. Ohio Apr. 30, 2010), *report and recommendation adopted*, 2010 WL

2010969 (N.D. Ohio May 20, 2010) ("When an inmate fails to allege that he received specific

threats and that he communicated those specific threats or fears to prison personnel, the Complaint

fails to state an Eighth Amendment claim for failure to protect." (citing *Harrison v. Burt*, No. 08-CV-12089, 2008 WL 5062808 (E.D. Mich. Nov. 25, 2008))).

Finally, Davis does not allege that he was part of a particular class of inmates or displayed a characteristic that rendered him vulnerable to attack by predatory inmates in the jail setting. *See Bishop v. Hackel*, 636 F.3d 757, 767–68 (6th Cir. 2011) (noting that prison officials may be held to be deliberately indifferent to a substantial risk of harm if the official is aware of characteristics that render the plaintiff vulnerable to assault). In contrast to *Bishop*, where the plaintiff had a history of mental illness and was younger and smaller in stature than his attacker, who had demonstrated predatory behavior, *id.* at 767–68, the video of the assault shows that Davis was larger than Chorak, (ECF No. 11-4), and there is no indication that Tooker (who classified Chorak to the same level as Davis) was aware that Chorak had displayed any predatory behavior toward other inmates.

As noted, the only evidence Davis points to is Chorak's prior assaultive behavior in connection with his prior sex offense, his pending unarmed robbery charge, and prior jail management issues, as information that should have alerted Defendants to the possibility that Chorak would attack other inmates. But this information, alone, is insufficient to impose liability on Defendants under the Eighth Amendment. Accepting Davis's contention would be tantamount to holding that prison or jail officials are unqualified guarantors of inmate safety, which they clearly are not under well-established law. *See Anderson v. Jones*, 440 F. Supp. 3d 819, 843 (S.D. Ohio 2020) (stating that even though the plaintiff suffered traumatic injuries due to a prison attack, "the fact remains that neither corrections officers, nor those who hire and train them, are insurers of inmate safety in prison environments").

### 2.    Clearly Established

Davis also fails to satisfy the second prong of the qualified immunity analysis. At this step of the analysis, the Court considers the state of the law as of the date of the alleged violation. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993. (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

While Davis had a clearly established right to be free from injury at the hands of other inmates, *Farmer*, 511 U.S. at 832, 933, that statement of the law is too general in this instance to put a reasonable prison official on notice that his conduct violated clearly established law. That is, a reasonable prison official would not have been aware that he was violating clearly established law by housing inmates with different criminal histories together, particularly where there was no previous indication that one of the inmates posed a specific risk of harm or that the other was particularly vulnerable. Davis fails to cite any case with similar circumstances that would have put Tooker and Scavarda on notice that their actions violated Davis's clearly established rights.

C.    *Monell Claim*

For his *Monell* claim, Davis alleges that the County failed to train and supervise Tooker

and Scavarda in the use of proper classification procedures and periodic reviews of those security

classifications. (ECF No. 1 at PageID.8–9.) This claim is subject to dismissal for alternate reasons.

First, "there can be no liability under *Monell* without an underlying constitutional violation."

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty.*, 205 F.3d 867,

879 (6th Cir. 2000)); *see also Przybysz v. City of Toledo*, 746 F. App'x 480, (6th Cir. 2018) ("As

a threshold matter, there can be no municipal liability under *Monell* when there is no constitutional

violation").

Second, and more fundamentally, Davis fails to allege facts supporting a plausible *Monell*

claim. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388–89 (6th Cir. 2017) (confirming that the

Supreme Court's decisions in *Twombly* and *Iqbal* apply to *Monell* claims); *Rayfield v. City of*

*Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory assertions [of a policy

or custom] are not enough to state a Twombly plausible *Monell* claim."). "A municipality's

culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to

train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish this type of claim, a plaintiff

must show that: "1) the [municipality's] training program was inadequate for the tasks that [its

employees] must perform; 2) the inadequacy was the result of the [municipality's] deliberate

indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson*

*v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d

461, 469 (6th Cir. 2006)). The first element focuses on the adequacy of the municipality's training

program. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Here Davis fails to include any

factual allegations (as opposed to legal conclusions), setting forth why the training program was

inadequate for the tasks. Davis merely alleges that the training and supervision of County

14

employees in classifying inmates was improper, without further elaboration. Similarly, Davis fails to include factual allegations to show that the County was deliberately indifferent to the inadequacy of its training program. Generally speaking, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference[.]" *Connick*, 563 U.S. at 62 (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). The complaint is silent on this aspect of the claim. Davis fails to allege even a single prior incident, let alone a pattern of similar incidents, that would have alerted the County to the fact that its training program was inadequate.

Davis's allegations are similarly deficient with regard to his failure-to-supervise claim. To impose municipal liability under this theory, a plaintiff must show that: (1) the defendant government was aware, or on notice, that its employees committed or were likely to commit constitutional violations; (2) it chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights; and (3) the lack of corrective action actually caused the alleged constitutional violation. *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). Rather than alleging facts that could plausibly sustain such a claim, Davis simply alleges conclusions that fail under *Twombly* and *Iqbal*. As is true for his failure-to-train claim, Davis provides no factual content to suggest that the County was deliberately indifferent to his or other citizens' rights. *See Doe v. Claiborne Cnty.,* 103 F.3d 495, 508 (6th Cir. 1996). The lack of similar instances of alleged unconstitutional conduct, or other facts putting the County on notice that its jail staff were likely to commit constitutional violations by improperly classifying inmates, dooms the failure-to-supervise claim.

D.      **Assault and Battery Claim**

Having concluded that the federal-law claims should be dismissed, the Court must next determine whether it will exercise supplemental jurisdiction over Davis's state-law claim against Chorak. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims")); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction over the claim against Chorak. There is no compelling reason for this Court to exercise jurisdiction over the remaining claim. Davis may refile this claim in state court. Therefore, the Court will dismiss the assault and battery claim without prejudice.

### III.   Conclusion

For the foregoing reason, the Court will **grant** the County Defendants' Motion to Dismiss (ECF No. 10), and dismiss the claims against the County Defendants with prejudice. The assault and battery claim will be dismissed without prejudice.

An Order consistent with this Opinion will enter.

Dated: August 26, 2022                               /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge